HAROLD D. CUNNINGHAM, III, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cunningham v. Commissioner
Docket No. 30145-81.
United States Tax Court
T.C. Memo 1983-338; 1983 Tax Ct. Memo LEXIS 449; 46 T.C.M. (CCH) 412; T.C.M. (RIA) 83338; June 9, 1983. *449 Harold D. Cunningham, III, pro se. Robert A. Miller, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency of $4,464.41, and an addition to tax pursuant to section 6653(a) [1] of $223.22, for petitioner's 1977 taxable year. Respondent has now conceded that petitioner is entitled to an investment credit of $236, which was disallowed by his statutory deficiency notice, and consequently two issues remain for our decision: (1) whether respondent improperly omitted certain sources of funds in applying the source and application of funds method to determine petitioner's 1977 taxable income; and (2) whether petitioner is liable for the section 6653(a) negligence addition. Some of the facts have been stipulated and are so found. Petitioner Harold D. Cunningham, III (hereinafter Harold), resided in Baltimore, Maryland, when the petition in this case was filed. Under an agreement with Galaxy *450 Lounge, Inc., covering the period from August 11, 1977 through July 31, 1978, Harold operated, during the latter part of 1977, a nightclub known as the Marble Bar, located at 306-310 West Franklin Street, Baltimore, Maryland. On September 13, 1977, Harold sold a half interest in the operation of the Marble Bar to Steven Feldman (hereinafter Feldman). The sale agreement provided for consideration totaling $6,800, to be paid $5,000 at the time of signing, and $150 a month for the subsequent 12 months. Feldman timely made the initial $5,000 payment, but Harold allowed him to postpone the monthly payments scheduled for 1977 because of cash flow problems and because Feldman was paying for improvements to the premises. On his income tax return for 1977, Harold reported no income other than his earnings from the operation of the Marble Bar. In his deficiency notice, respondent determined the following applications and sources of funds for Harold's 1977 taxable year: [2]
Application of Funds
Purchases
$30,889.10
Other Cash Operating Expenses
78,689.05
Improvements and Equipment
15,343.00
Escrow Payment to Galaxy Lounge, Inc.
5,000.00
Deposit on House
4,000.00
Feldman's Drawings: 10/1/77 thru 10/22/77 - (4$300X.) = $1,200.00
10/29/77 thru 12/10/77 - (7$150X.) = 1,050.00
2,250.00
Personal Expenditures
7,698.00
Total Application of Funds
$143,869.15
Sources of Funds
Gross Receipts Reported
$114,966.69
Feldman's Improvements and Capital
15,000.00
Provident Savings Bank Proceeds: Loan Balance - 12/9/76 - $1,118.16
Loan Balance - 11/10/77 - 1,148.16
30.00
Total Sources of Funds
129,996.69
*451 On December 29, 1977, Harold borrowed $4,000 from the Mercantile-Safe Deposit & Trust Company. Due to declining business and various disputes with Galaxy Lounge, Inc., Harold's agreement with Galaxy Lounge, Inc., was terminated in early 1978, and he severed his connection with the Marble Bar. During 1977, Harold did not follow generally accepted, or any meaningful accounting principles in keeping the financial records of the Marble Bar, as the following excerpt from the trial transcript will indicate: THE COURT: * * * * * * [W]hen you first started out, how did you keep track of purchases and sales and -- THE WITNESS: When we first started out, before Steven Feldman became a partner, which is a very short time after that he did, my wife took care of -- you know, she had manila folders * * * And we had manila folders and we had our beer invoices and our liquor invoices, and our table-cloth -- linen invoices, and we kept that in records, and we kept dailies -- sales records *452 of what we sold, and we sold -- you know, our sales tax reports, and we kept records of what we had for our band expenses. And it was a very small time -- THE COURT: How did you keep them? Did you have any ledger books? THE WITNESS: Pretty much -- I had pieces of paper here and pieces of paper there. That's how I did it. * * * THE COURT: Did Mr. Feldman keep any better records than you did? THE WITNESS: His brother kept records, his stepbrother kept records, but this stepbrother died in an automobile accident. Respondent used the source and application of funds method to determine the deficiency in this case. That method is based on the assumption that the amount by which a taxpayer's application of funds for a taxable year exceeds his reported sources of funds for that year is attributable to taxable income. , affd. ; . The source and application of funds method is not a method of accounting, , but is available to respondent as evidence *453 of unreported income, , affg. on this issue a Memorandum Opinion of this Court, especially where the taxpayer's books and records fail to reflect all of his income. . [3]
Respondent's determination of Harold's unreported income is presumptively correct, and Harold bears the burden of proving this determination wrong. Rule 142(a). To meet his burden, Harold must prove either that someone else expended the funds listed in the application of funds table reprinted above, or that those funds were obtained from nontaxable sources such as loans, gifts, inheritance, or assets on hand at the beginning of 1977. . [3]
At trial, Harold did not challenge respondent's calculation of his application of funds for 1977. He has thus failed to meet his burden of proof respecting that calculation. Harold did challenge respondent's calculation of his source of funds in *454 two respects. First, he claimed that respondent failed to credit any amount of the $4,000 loan he received from the Mercantile-Safe Deposit & Trust Company on December 29, 1977, and testified that he spent $1,600 to $1,800 of this amount at the end of December 1977, to pay past due bills and keep the business alive. He was unable to document this amount, but we were impressed with his sincerity and apparent truthfulness and consequently find that he spent $1,000 of the Mercantile-Safe Deposit & Trust Company loan proceeds in 1977, and that such amount must be added to his 1977 sources of funds. Second, Harold claimed that respondent erred by allowing only $15,000 under the heading "Feldman's Improvements and Capital." As noted above, the burden of proof on this issue is on Harold. He testified at trial that Feldman supplied $15,000 for improvements to the Marble Bar, in addition to the $5,000 he paid to Harold under the sale agreement of September 13, 1977. Harold, as noted, was a candid witness, but his testimony regarding Feldman's alleged expenditures is admittedly a mere estimate, [4] and his recordkeeping at the time the expenditures were made was nonexistent. This makes *455 it impossible for us to allow more than the $15,000 determined by respondent, which seems generous. Harold presented no other evidence on this point, but respondent introduced testimony of IRS Agent Donald Wilson and IRS Field Officer Benjamin Millman, both of whom testified that Harold's trial testimony concerning the amount of funds supplied by Feldman was inconsistent with statements he had made prior to trial. Based on the foregoing, and the entire record, we find and hold that Harold has not met his burden of proving that respondent erred in allowing only $15,000 under the heading "Feldman's Improvements and Capital." Section 6653(a)(1) provides in part that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount *456 equal to five percent of the underpayment. Harold did not contest this issue, and thus has not met his burden of proof. We hold that Harold's underpayment of tax was due to negligence within the intendment of section 6653(a). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The amounts included in the application and source of funds tables were derived from Schedule C of Harold's 1977 tax return, and from discussions between Harold and respondent's agents.↩
3. .↩
3. .↩
4. Harold testified as follows: I really don't -- I know [Feldman] spent at least [$15,000] * * * in repairing the place, okay. He didn't give the money to me, now, he paid it to carpenters and plumbers, and people like that. And I really don't know the exact -- I think it might have been in excess of that, but I'm not certain.↩